## 51022. HARRISON v. GOODYEAR SERVICE STORES.

STOLZ, Judge.

This is an appeal from an order granting foreclosure on a security agreement executed by Marie Harrison, the appellant, in favor of Goodyear Service Stores, the appellee, on February 4, 1974. Appellant purchased various appliances from Goodyear under sales agreements subject to the Retail Installment and Home Solicitation Sales Act, Code Ann. § 96-9 (hereinafter the Installment Sales Act). As each item was purchased, she signed a new sales contract incorporating the previous unpaid balance, less rebates on unearned finance charges and credit life insurance, into the new time price. The new contract was secured by unpaid collateral from the current and prior contracts. Appellant made timely payments on the contract until September, 1974, at which time further payments were discontinued. On March 21, 1975, Goodyear accelerated the unpaid balance and filed an application to foreclose pursuant to Code Ann. Ch. 67-7.

Ms. Harrison appeals from the order granting this application on the grounds that the contract violated the Installment Sales Act, thereby requiring forfeiture of finance charges and consequent recomputation of the unpaid balance, which would show that appellant was not yet in default at the time of acceleration. *Held:*

Whether Goodyear may foreclose its security interest depends upon whether Harrison was in default. The sales contract sub judice shows that the buyer was to make 35 payments of $60 and a final payment of $18.19, totaling $2,118.19. However, appellant Harrison owed Goodyear only $1,578.19, inclusive of taxes, credit life insurance and finance charge. Standing alone, Goodyear's use of 36 payments might not be a serious infraction; however, Goodyear also computed the finance charge on the basis of 36 monthly payments when the contract would be paid in full at the end of 27 months.[1] Hence, the sales contract upon which Goodyear based its application to foreclose is violative of the Installment Sales Act.

Under Code Ann. § 96-910 (b), a violation of the Act bars recovery of any finance, delinquency, or collection charge. It is of no consequence that the excessive charges may have resulted from an inadvertent error or that Goodyear may have orally offered to reduce the amount for which it sued Harrison. The amount that Goodyear might ultimately collect is not determinative of whether it violated the Installment Sales Act. Rather, it is the amount that Goodyear charged the appellant at the time it accelerated her unpaid balance that placed it in violation of the Act. In *Reese v. Termplan, Inc., Bolton,* 125 Ga. App. 473 (188 SE2d 177), we held that the Installment Sales Act was violated at the time the seller attempted to accelerate the unpaid balance. In the present case, to allow Goodyear to avoid the statutory forfeiture by a "good faith" offer to correct an excessive time-price computation would not only ignore our decision in *Reese,* supra, but would severely dilute the penalty provisions of Code Ann. § 96-910. If a seller is allowed to change his time-price differential after it is determined that his

---

[1] $60 x 26 = $1,560. $1,560 + $18.19 = $1,578.19.

charges violated the Act, then we render the penalty provided in § 96-910 (b) totally ineffective, since forfeiture of finance charges deters no one if the violation may be erased and forfeiture thus avoided by a simple offer to reduce the amount charged. The civil penalty provisions of the Installment Sales Act are twofold: § 96-910 (b) provides for forfeiture of finance, delinquency or collection charges for *a violation* of § 96-903 (d) or § 96-904 (c), whereas § 96-910 (c) provides a monetary penalty for *a wilful violation* of any provision of the Act.

Normally, the forfeiture of all finance charges would not affect one's right to repossess secured property, *provided there has been a default.* However, since the forfeiture of finance charges requires a recomputation of the amount owed, it may be determined whether or not a default has occurred. For example, if A owes B $100 to be paid $10 a month for 10 months under a retail sales contract, $40 of which is an unlawful time-price differential, then if A "defaults" after paying $60 and B sues to foreclose on secured property, could we grant B's application? If the time-price differential violates Code Ann. Ch. 96-9, then B forfeits all of it, leaving a $60 debt, which A has already paid. A is not in default. To hold otherwise would allow B to repossess collateral for which he has received all that he is entitled to under the law. It hardly penalizes B to deny him finance or delinquency charges while allowing him to repossess property for which he has already been paid.

An analogous principle applies in the instant case. Marie Harrison owed Goodyear $1,578.19 on this contract. Correctly computed, this should have required only twenty-six payments of $60 and a final payment of $18.19. Since the appellee is now barred from recovering its finance charge, the amount owed on the contract must be reduced by $509.31, the amount of the finance charge.[2] At the time of acceleration, appellant Harrison had paid Goodyear $420, leaving an unpaid balance of $648.88 on her account.[3] However, at that time, there were fourteen months remaining on the contract with thirteen

---

[2]$1,578.19 − $509.31 = $1,068.88, the new balance.
[3]$1,068.88 − $420 = $648.88.

payments of $60 and a final payment of $18.19 still scheduled, for a total of $798.18.[4]

At either the time of acceleration or of the hearing, Goodyear had payments scheduled which exceeded the amount of the unpaid balance. Some or none of that outstanding sum may have been the forfeited finance charge. The contract does not specify whether the finance charge was to be paid before the principal, after the principal, or in some proportion to the principal in monthly installments. If the finance charge was to be paid before repayment of the principal, then the buyer, Ms. Harrison, was not yet in default since at the time of acceleration she owed Goodyear only $648.88, when under the contract, at least $738.19 in repayment of principal was still scheduled. Of course, if finance charges were to be paid after principal, then the appellant was in default. We cannot say what the result would be if the finance charge was paid off in some proportion (unknown to us) to the repayments on the principal.

The contract is silent on the very factor which determines whether the appellant was in default at the time Goodyear declared the unpaid balance due. Construction of an ambiguous contract is for the court; in line with the directive of Code Ann. § 20-704 (5), we interpret this contract most strongly against the party who prepared the instrument. Therefore, we construe the agreement to provide for repayment of finance charges before principal, as is typically the case. We hold that appellant Harrison was not yet in default either at the time the contract was accelerated or at the time the hearing was held on Goodyear's application to foreclose.

Our decision does not mean that Goodyear cannot foreclose its security interest in the event that the appellant defaults on her contract at a time when the unpaid balance exceeds the remaining scheduled payments. We simply hold that in this case, the application to foreclose was premature.

The Installment Sales Act is in derogation of the common law; as such, it must be construed most strictly so

[4]Even at the time of the hearing, thirteen payments totaling $738.19 were still scheduled.

as to effectuate its deterrent penalty provisions and enforce its regulatory policy. In a case such as this, where a seller has violated the Act, he may not recover absent a clear showing that, notwithstanding his prior unlawful behavior, the seller is entitled to what he seeks, when he seeks it.

*Judgment reversed. Deen, P. J., concurs. Evans, J., concurs in the judgment only.*

ARGUED SEPTEMBER 9, 1975 — DECIDED JANUARY 7, 1976.

*Ernest V. Harris, John L. Cromartie, Jr.*, for appellant.

*Greer, Sartain & Carey, J. Nathan Deal*, for appellee.